# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SHARON DEARMOND,

    Plaintiff,

v.

OFFICER ROBLES, LT. DANZ,
and LT. RAMIREZ,

    Defendants.

CIVIL ACTION FILE

NO. 1:19-CV-4598-MHC

## ORDER

This case comes before the Court on Plaintiff Sharon DeArmond

("DeArmond")'s Motion for Leave to Amend Her Complaint and to Join

Additional Defendants ("Mot. to Amend") [Doc. 57].

## I.    BACKGROUND

### A.    The Underlying Incident

On the evening of October 12, 2017, DeArmond, who was driving for Uber

in Cobb County, Georgia, dropped off a female rider at an Extended Stay America

in Atlanta, Georgia. Compl. [Doc. 1] ¶¶ 11-12. DeArmond was parked and taking

a break in a nearby restaurant parking lot when three Cobb County Police

Department ("CCPD") cruisers sped towards her. Id. ¶¶ 13-16. Without

identifying them by name, DeArmond alleges that the officers jumped out of their vehicles with weapons drawn and pointed their weapons at her. Id. ¶ 17. She was ordered to put her hands up and step away from her vehicle, and one of the officers confiscated her phone. Id. ¶¶ 19, 21-22. Another officer asked what she was doing, and DeArmond answered that she was an Uber driver and was just taking a break in between rides. Id. ¶ 23. The officers handcuffed her while a third officer began to search her vehicle. Id. ¶¶ 24-25.

The officers put DeArmond in the back of one of the cruisers and, in response to her question of whether she was under arrest, the officers told her that they were taking her to "another location." Id. ¶¶ 29-31. The officers drove her and her vehicle to the parking lot of a nearby office park, where they conducted a more thorough search of her car. Id. ¶¶ 32-33, 38-39. Eventually, the handcuffs were removed and one of the officers asked DeArmond if she knew why she was being detained, and DeArmond responded twice that she did not know. Id. ¶ 42. When questioned about the person she had just dropped off, DeArmond stated that she did not know who the rider was, and one of the officers claimed that the rider was a prostitute. Id. ¶¶ 43-44. An officer then obtained DeArmond's name and date of birth, and she was released. Id. ¶ 45.

DeArmond's Complaint asserts claims under (1) 42 U.S.C. § 1983 for

violations of her Fourth Amendment rights against illegal detention, search and

seizure (Count I), (2) O.C.G.A. §§ 51-7-1, 20, 22 for false arrest/false

imprisonment (Count II), and (3) O.C.G.A. § 13-6-11 for attorney's fees (Count

III). Id. ¶¶ 53-77.

**B.    Procedural Background**

DeArmond filed her Complaint on October 11, 2019. See Compl. Although

the allegations of the Complaint refer to just three unnamed officers, DeArmond

initially named the following seven officers as Defendants: Officer Robles

("Robles"), Officer Rodas ("Rodas"), Lt. Danz ("Danz"), Lt. Ramirez ("Ramirez"),

Detective Hardwick-Tabor ("Hardwick-Tabor"), Detective Llewellyn

("Llewellyn"), and Detective McFarland ("McFarland"). See Compl. Defendants

waived service on December 11, 2019 [Doc. 17], and filed their Answer to the

Complaint [Doc. 18] on February 3, 2020.

On February 14, 2020, upon a Joint Motion for Referral to Magistrate Judge

for Mediation [Doc. 22], the case was stayed and referred to mediation before

United States Magistrate Judge Christopher C. Bly. Feb. 14, 2020, Order

[Doc. 23]. The mediation occurred on May 12, 2020, but the parties were unable

to reach a resolution. Doc. Entry 30. No discovery occurred prior to the mediation.

The Joint Preliminary Report and Discovery Plan ("JPRDP") [Doc. 32] was filed on May 29, 2020. In the JPRDP, Defendants indicated that the following named parties were improperly joined: Hardwick-Tabor, Llewellyn, McFarland, and Rodas.[1] JPRDP at 7. In response, DeArmond stated:

> All Defendants named in this suit were identified by the Cobb County Police Department (CCPD) as being the officers involved in the incident described in the Complaint. This information was provided to Plaintiff's counsel, via email, in response to open records requests and subsequent phone calls with the CCPD records clerk, after months of CCPD denying the incident ever took place in response to numerous requests for information. To the extent Plaintiff was provided inaccurate information by the CCPD and Defendants' contention above is true, Plaintiff will engage in discovery to learn the correct identities and move the Court for leave to correct the identities of the named Defendants, if necessary.

Id. at 7-8. The JPRDP further provided that "[a]mended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed. R. Civ. P. 15," and the parties, including DeArmond, indicated that they did not anticipate any amended or supplemental pleadings at that time.

---

[1] Rodas is identified in the JPRDP as "Rojas." JPRDP at 7. It appears that these two names refer to the same person, so the Court will refer to him as "Rodas" for consistency.

Id. at 8. Moreover, the JPRDP provided that "[a]mendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the [JPRDP] is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law." Id. The JPRDP, in relevant part, was adopted as the Scheduling Order [Doc. 35] on June 3, 2020.

On May 29, 2020, DeArmond also filed her Initial Disclosures ("Pl.'s Initial Disclosures") [Doc. 33], in which she noted that she was not aware that Rodas, Hardwick-Tabor, Llewellyn, and McFarland had no involvement in the case until Defendants notified her of that fact on May 28, 2020. Pl.'s Initial Disclosures at 2-3 n.1. She further stated that all of the named Defendants were provided to her by CCPD, "after months of CCPD denying any involvement in the incidents alleged in the Complaint; if this information is incorrect, that would be the fault of CCPD. If through discovery, Plaintiff confirms Defendants' allegations, then she will seek leave of this Court to correct the named Defendants." Id. On May 30, 2020, Defendants filed their Initial Disclosures ("Defs.' Initial Disclosures") [Doc. 34], identifying the originally named seven Defendants, along with Detective Meredith Holt, Special Agent Dervish, and an unnamed Cobb County Sheriff's Office Deputy as individuals believed to have discoverable, non-privileged information concerning the facts and circumstances of the incident.

5

DeArmond sent her Interrogatories to Robles on July 22, 2020, and, on September 4, 2020, Defendants sent back their responses and objections. Rule 5.4 Certificates of Service [Docs. 38, 44]. In response to DeArmond's interrogatory to "Please identify all law enforcement officers present during the stop and detention of Plaintiff Sharon DeArmond . . . ," Robles identified, among others, Deputies Jose Cadena ("Cadena") and Adam Redish ("Redish"). Def. Robles's Objs. and Resps. To Pl.'s Interrogs. to Def. Officer Robles ("Robles Interrogs.") [Doc. 57-7] ¶ 1.

On November 6, 2020, DeArmond noticed the deposition of Danz [Doc. 52] for November 16, 2020. During this deposition, Danz confirmed the identities of Redish and Cadena in the bodycam footage and that they were part of the Marietta, Cobb, Smyrna Task Force. Dep. Tr. of Bruce Danz (Nov. 16, 2020) [Doc. 57-9] at 54-56. On November 24, 2020, DeArmond filed a Stipulation of Dismissal [Doc. 56] of Rodas, Hardwick-Tabor, Llewellyn, and McFarland, leaving only Robles, Danz, and Ramirez as named defendants. Then, on November 29, 2020, DeArmond filed the instant Motion to Amend to join Redish and Cadena as defendants. See Mot. to Amend.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 15(a), a party may amend her complaint once as a matter of course within twenty-one days after service of a response by answer or motion.  Otherwise, the party may amend her complaint "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).  Rule 15(a) further instructs that "[t]he court should freely give leave when justice so requires." Id.  "The Supreme Court has emphasized that leave to amend must be granted absent a specific, significant reason for denial." Spanish Broad. Sys. v. Clear Channel Commc'ns, 376 F.3d 1065, 1077 (11th Cir. 2004) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  When considering whether such a reason exists, the district court may consider factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182; see also Felio v. Hyatt, No. 1:12-CV-4186-ODE, 2014 WL 12634467, at *6 (N.D. Ga. Aug. 7, 2014) (citing Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1241 (11th Cir. 2009)).

However, when a motion to amend is filed after the time provided by a court's scheduling order, the plaintiff "must first demonstrate good cause under

7

Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a)." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (citations omitted). Rule 16 requires that the Court enter a scheduling order that contains limitations on "the time to join other parties, amend the pleadings, complete discovery, and file motions." FED. R. CIV. P. 16(b)(3)(A). Such orders "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4); see also S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under FED. R. CIV. P. 16(b)."). If the Court were to consider Rule 15(a) amendments without regard to the requirements of Rule 16(b), the Court "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." Sosa, 133 F.3d at 1419.

## III. DISCUSSION

DeArmond seeks to amend her initial pleading to include the names of Cadena and Redish and to clarify certain factual allegations regarding the actions of these two officers related to the incident. Mot. to Amend at 1-2. She also attaches her proposed Amended Complaint [Doc. 57-1]. DeArmond asserts that

Redish assisted in the detention, arrest, and transportation of DeArmond to the office building parking lot, and Cadena entered her vehicle, searched it, and drove it to the secluded location. Mot. to Amend at 8.

The good cause standard under Rule 16 "precludes modification [of a scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Sosa, 133 F.3d at 1419 (citing FED. R. CIV. P. 16 advisory committee's note); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry should end."). Lack of diligence can include both situations where (1) the plaintiff "has full knowledge of the information with which it seeks to amend its complaint before the deadline passes," and (2) the plaintiff "fail[s] to seek the information it needs to determine whether an amendment is in order." S. Grouts, 575 F.3d at 1241 n.3. "It is only after the court addresses whether the proposed amendment may be granted under Rule 16 that the court is to determine whether it is proper under Rule 15." Nobles v. Rural Cmty. Ins. Servs., 303 F. Supp. 2d 1279, 1283 (M.D. Ala. 2004).

Because the JPRDP was filed on May 29, 2020, the deadline for filing amendments to the pleadings was June 29, 2020. DeArmond's Motion to Amend was filed on November 29, 2020, five months after this deadline. Defendants

9

contend that, in light of this delay, DeArmond fails to show that she was diligent in her efforts to (1) uncover the identity of the proper Defendants or (2) timely amend her Complaint once she had notice of the correct identities. Defs.' Resp. in Opp'n to Pl.'s Mot. to Amend ("Defs.' Opp'n") [Doc. 63] at 8-16. In reviewing the Motion to Amend, the attached exhibits, and the record as a whole, the Court finds that DeArmond exhibited a lack of diligence, based on her failure to timely amend her Complaint once she had notice of the proper party names.

Prior to the filing of DeArmond's Complaint, DeArmond's counsel sent multiple open records requests to CCPD as early as January 2018, two months after the incident, but none of these requests revealed the correct names of the officers involved in the incident. Mot. to Amend at 2-3; see Collection of E-mails from Lisa Lambert, DeArmond's Counsel, to Cobb County Sheriff's Office and Cobb County 911 Records Custodians [Doc. 57-2]. DeArmond's counsel continued to send and clarify her requests periodically through 2019, and still a list of the officers involved in the incident was not provided by CCPD until October 11, 2019, the date that DeArmond filed her Complaint. Mot. to Amend at 3; see E-mails between Sabrina Woodall, Records Supervisor Cobb County 911, and Lisa Lambert (Sept. 26-27, 2019) [Doc. 57-3]; E-mails between Sabrina Woodall, Records Supervisor Cobb County 911, and Lisa Lambert (Sept. 30-Oct. 1, 2019)

10

[Doc. 57-4]; E-mail from Sabrina Woodall and Lisa Lambert (Oct. 2, 2019) [Doc. 57-5]; E-mail from Chelsea Cavender, Central Records CCPD, to Lisa Lambert (Oct. 11, 2019) [Doc. 57-6] at 1 (listing Robles, Rodas, Ramirez, Danz, Hardwick-Tabor, Llewellyn, and McFarland as officers involved in the incident). Defendants contend that DeArmond's reliance on these open records requests was unreasonable, Defs.' Opp'n at 10-11, but the Court disagrees. It appears that DeArmond used the tools available to her to attempt to uncover the names of the parties involved in the incident, and Defendants have not provided any authority to support their proposition that reliance on identifications of officers made in an open records request is inappropriate.

Defendants further contend that DeArmond was not diligent in uncovering the correct parties because she waited two months to serve discovery requests on Defendants, even after Defendants stated in the JPRDP that four of the named parties were improperly named. Defs.' Opp'n at 9. However, a statement that certain Defendants were not involved in the underlying incident, without more, is not equivalent to an affirmative statement that there were other officers that should have been named or that DeArmond failed in some way to uncover their identities. Moreover, Defendants' assertion in the JPRDP—that Hardwick-Tabor, Llewellyn, McFarland, and Rodas were improperly named Defendants—was inconsistent with

11

Defendants' Initial Disclosures, where they continued to list these four officers as having some information regarding the incident. See Defs.' Initial Disclosures. Thus, Defendants' statement in the JPRDP did not, by itself, obligate DeArmond to act any quicker than she did in sending out further written discovery requests.

However, once DeArmond received Defendants' responses to the Robles Interrogatories on September 4, 2020, she became aware of the names of at least two other officers who were present on the night of the incident. See Robles Interrogs. ¶ 1 (identifying Redish and Cadena, among others, as "officers present during the stop and detention of Plaintiff"). DeArmond did not move to amend the Complaint at that time but chose to notice the deposition of Danz two months later to "confirm" the roles of Redish and Cadena. Pl.'s Reply in Supp. of Her Mot. to Amend ("Pl.'s Reply") [Doc. 65] at 3-4. Although she filed her Motion to Amend two weeks after the Danz deposition, DeArmond does not justify the failure to move to amend the Complaint after learning of the identities of Redish and Cadena. See Mot. to Amend at 7-8; Pl.'s Reply. It took almost three months from the time DeArmond learned of the new officers' names to the time she filed her Motion to Amend, which itself was five months after the expiration of the deadline for filing amendments. The Court finds that DeArmond was not diligent in filing her Motion to Amend once she discovered evidence of additional parties. See S.

Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1242 (11th Cir. 2009)

("Southern Grouts lacked diligence, at the very least, because it waited . . . to file a

motion to amend its complaint with information that it had known over a month

before . . . .").

Nevertheless, even if the Court determined that DeArmond was diligent,

DeArmond's proposed amendment would be futile. "'Futility of amendment is

also a proper reason for denying a motion for leave to amend' under Rule 16(b)."

Bowers v. Am. Heart Ass'n., Inc., 513 F. Supp. 2d 1364, 1368 (N.D. Ga. 2007)

(alterations accepted) (quoting Alexander v. AOL Time Warner, Inc., 132 F.

App'x 267, 268 (11th Cir. 2005), and collecting cases). "A proposed amendment

is futile when the allegations of the proffered complaint would be unable to

withstand a motion to dismiss." Id. at 1369 (alterations accepted) (quoting Amick

v. BM & KM, Inc., 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003)).

Defendants contend that DeArmond's claims against Redish and Cadena are

time-barred because the statute of limitations on her § 1983 claims expired on

October 12, 2019.[2] Defs.' Opp'n at 17. DeArmond asserts that the Court should

---

[2] Defendants also argue that DeArmond's claims against Redish and Cadena are
time-barred because they do not relate back to the original claim under Rule 15(c).
Defs.' Opp'n at 19-23. DeArmond has rejected the application of the relation-back
doctrine, stating that "this is not a relation back issue – this is an accrual issue.

13

find otherwise because her claims against Redish and Cadena did not accrue until

she learned of their names on September 4, 2020. Mot. to Amend at 10. This

Court does not agree.

The statute of limitations for § 1983 claims brought in Georgia is two years,

as set forth in O.C.G.A. § 9-3-33. Mullinax v. McElhenney, 817 F.2d 711, 716 n.2

(11th Cir. 1987). The statute of limitations for false arrest and imprisonment

---

Plaintiff did not mistake their identity – she did not know of their identities." Pl.'s
Reply at 7.

The Court notes that DeArmond's position would have precluded her attempt to
amend her Complaint even if she had initially named John Doe defendants in her
Complaint and sought merely to substitute their names after the Scheduling Order
had been entered. See Bloodworth v. United States, 623 F. App'x 976, 979 (11th
Cir. 2015) (citing Wayne v. Jarvis, 197 F.3d 1098, 1003-04 (11th Cir. 1999),
overruled in part on other grounds by Manders v. Lee, 338 F.3d 1304, 1328 n.52
(11th Cir. 2003) (en banc)) ("A plaintiff's amendment to identify parties
previously designated as 'John Doe' defendants in the complaint does not relate
back to the filing of the original complaint under Federal Rule of Civil Procedure
15 because the amendment is made to correct the plaintiff's lack of knowledge
about whom to sue, not a mistake by the defendant in identifying the proper
party."); Lelieve v. Orosa, No. 10-23677-CIV, 2011 WL 5103949, at *4 (S.D. Fla.
Oct. 27, 2011) ("Lack of knowledge is not an 'error, a misnomer, or a
misidentification' that allows an amendment to fall within Rule 15(c)(1)(C)'s
ambit."). See also Johnson v. Columbia Cnty., Ga., No. CV 116-165, 2017 WL
2874619, at *4 (S.D. Ga. July 5, 2017) (denying as futile plaintiff's motion to
substitute the names of fictitious parties with the proper identities after the
Scheduling Order had been entered because "merely changing the name of John
and Jane Doe Defendants does not relate back to Plaintiff's original complaint,"
and her claims against the proposed individuals fell outside the applicable two-year
statute of limitations).

claims also is two years. <u>Reese v. City of Atlanta</u>, 247 Ga. App. 701, 702 (2001).

The length of the limitations period is to be governed by state law, but the question

of "when a section 1983 action accrues is a question of federal law." <u>Mullinax</u>,

817 F.2d at 716 (collecting cases). "In Section 1983 cases, 'the statute of

limitations does not begin to run until the facts which would support a cause of

action are apparent or should be apparent to a person with a reasonably prudent

regard for his rights.'" <u>Id.</u> (alterations accepted) (quoting <u>Calhoun v. Ala.

Alcoholic Beverage Control Bd.</u>, 705 F.2d 422, 425 (11th Cir. 1983)).

DeArmond filed her Complaint on October 11, 2019, one day prior to the

expiration of the statute of limitations on her claims. Even assuming that she

worked diligently during the two years prior to the filing of her Complaint to

discover the appropriate names of the officers involved in her alleged unlawful

detention, she nevertheless waited until the last moment to file her Complaint. In

order to avoid the time bar, DeArmond relies on the language in <u>Mullinax</u>, but

such reliance is misplaced. <u>See</u> Mot. to Amend at 9-11. In <u>Mullinax</u>, the Eleventh

Circuit Court of Appeals determined that a plaintiff's entrapment, conspiracy, and

harassment claims were not time-barred because they did not accrue until the

plaintiff became aware of the entrapment attempts made against her. <u>Id.</u> at 716-17.

This case is different because DeArmond was aware of the injury on October 12,

2017, when she was handcuffed in the parking lot and her vehicle and person

searched by police officers. DeArmond erroneously interprets the Eleventh

Circuit's statement that "a Section 1983 action [does not] accrue until the plaintiff

is aware or should have been aware who has inflicted the injury," to mean that the

claim does not accrue until the plaintiff knows the *identity* of who inflicted the

injury. See Mot. to Amend at 9. However,

> [t]he court's holding in Mullinax does not support Plaintiff's argument
> that a Section 1983 claim does not begin to accrue until all possible
> defendants are discovered. Instead, it demonstrates that a court must
> examine the allegations with respect to each of the defendants to
> determine when the facts giving rise to the Section 1983 claim against
> a particular defendant were or should have been apparent to a person
> with a reasonably prudent regard for his rights.

Griffin Indus., Inc. v. Couch, No. 1:05-CV-0684-WSD, 2006 WL 783354, at *6

(N.D. Ga. Mar. 23, 2006), rev'd in part on other grounds sub nom. Griffin Indus.,

Inc. v. Irvin, 496 F.3d 1189 (11th Cir. 2007). Thus, the Court finds that

DeArmond's § 1983 claims against all of the officers, even Redish and Cadena,

began to accrue on October 12, 2017, the night of the underlying incident.

Accordingly, even if DeArmond was diligent in filing her Motion to Amend,

which this Court finds she was not, DeArmond's request to amend her Complaint

to add Redish and Cadena as Defendants would be futile because such claims are time-barred and would not survive a motion to dismiss.[3]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Sharon DeArmond's Motion for Leave to Amend her Complaint and to Join Additional Defendants [Doc. 57] is **DENIED.**

**IT IS SO ORDERED** this 22nd day of April, 2021.

_____
MARK H. COHEN
United States District Judge

---

[3] Defendants also argue that DeArmond's amendment would cause undue delay and prejudice to Defendants. Defs.' Opp'n at 23-25. Because the Court denies DeArmond's Motion to Amend for lack of diligence, or alternatively, as futile, it need not reach these additional factors under Rule 15(a)(2). See Sosa, 133 F.3d at 1419.