IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHARON DEARMOND,

    Plaintiff,

v.                                                                    Case No. 1:19-cv-04598-MHC

OFFICER ROBLES, LT. DANZ,                         JURY TRIAL
And LT. RAMIREZ,                                           DEMANDED

    Defendants.
_____/

## PLAINTIFF'S MOTION TO EXCLUDE CONTRADICTORY TESTIMONY, UNRELIABLE TESTIMONY AND UNDISCLOSED EVIDENCE

Plaintiff Sharon DeArmond files her Motion To Exclude Contradictory Testimony, Unreliable Testimony, and Undisclosed Evidence filed in support of Defendants' motion for summary judgment and in support states as follows:

**Contradictory Testimony**

The Eleventh Circuit permits portions of an affidavit to be disregarded as a "sham" where it flatly contradicts earlier deposition testimony without valid explanation. *See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). In *Van T. Junkins*, the president of the plaintiff company, Mr. Junkins, testified at deposition that there were no conditions to the execution of a

contract; however, in response to summary judgment he submitted an affidavit stating the contract was predicated on being able to purchase a building. 736 F.2d at 657. The Court ruled that was an obvious contradiction; indeed, his testimony in his affidavit was completely opposite to what he testified to at deposition. *See id*.

Like Mr. Junkins, Lt. Ramirez has submitted testimony in his declaration that completely contradicts his deposition testimony. At his deposition, Ramirez provided the following testimony:

> **Q. You contend that the interaction with Ms. Dearmond was a Tier 2 stop?**
> MS. MURPHREE: Object to form, unless you can answer it.
> If you can answer it, answer it.
> **A.  That's Tier 2.**
> Q. Okay. And what was the reasonable suspicion for the Tier 2 stop?
> A. They arrested the prostitute that she had just dropped off. And her standing nearby, it seemed as if she was waiting for her to conduct -- finish conducting her business upstairs, then to pick her up, as if she was part of the operation -- part of the illegal activity.
> **Q. Okay. So it did not reach Tier 3?**
> **A. No, ma'am.**

Doc. 84, Ramirez dep. at 47:23-48:13 (emphasis added). However, in his declaration submitted to support Defendants' motion for summary judgment, Ramirez claimed under oath that:

> At the moment we approached Plaintiff, we had probable cause to arrest her for violation O.C.G.A. § 16-6-11, Pimping, as we knew *at*

> *that time,* she transported another person to a place for the purpose of prostitution.
>
> At the time we approached Plaintiff, we had probable cause to arrest her for violation of O.C.G.A. § 16-2-20, Party to the Crime of Prostitution; as we believed *at that time* she was concerned with the commission of a crime, as a party to prostitution, since she drove her passenger to a hotel where the passenger committed prostitution.
>
> Although probable cause existed, Plaintiff was never taken to detention center to be processed into custody.

Doc. 81-4, ¶¶ 36, 38, 46. Ramirez provides no explanation for the marked departure from his deposition testimony. As such, these paragraphs should be excluded.

Likewise, Defendant Robles provides inconsistent testimony in his declaration. He states that "On October 12, 2017, I attended a pre-operation task force meeting at the MCS office regarding my assignment for that evening." Doc. 81-5, ¶ 8. But in his deposition, he testified as follows:

> Q. Okay. Now, for this specific operation on October 12, 2017, were you provided any training for the operation?
> A. No, ma'am.
> Q. Did you have any briefing for the operation?
> A. No, ma'am.

(Robles Dep. at 25:12-17). He fails to explain this contradictory testimony and it should be excluded.

Finally, both Danz and Robles averred that they are "aware that individuals

3

are known to hack into Uber's app and pretend to be an Uber driver for nefarious purposes and also that individuals perpetrating crime are known to pretend to be a ride share drivers [sic] by putting Uber and Lyft stickers and signs in their motor vehicles." Doc. 81-3, ¶ 52; Doc. 81-5, ¶ 40. "Hacking" into the Uber app is newfound testimony for Danz and Robles. Danz made no mention of this alleged hacking in his deposition; he stated he knew the app worked in a random manner and that drivers did not know who they are picking up but also that, "this was kind of new to [him], at the time" in regards to taking any precautions relating to Uber or Lyft drivers. (Danz dep. at 65:19-22, 70:24). Robles testified that he was aware of people who used friends' Uber stickers to impersonate a driver; not that he knew they would hack into the app itself. (Robles dep. at 30:20-31:24). And, in fact, Robles confirmed that Uber drivers were legitimate by looking at the app on their phone. (*Id*. at 32:7-33:1). Only Defendants' counsel's questions to Plaintiff raised this issue of alleged hacking into the app; but Plaintiff's testimony does not support what the Defendants knew at the time of the encounter. *See* DeArmond dep. at 62:18-64:13. These paragraphs in each Defendant's declaration should be excluded as well.

### **Pagination Questions on Declarations**

All three Defendants signed their declarations on May 27, 2021. *See* Docs.

4

81-3, 81-4 and 81-5. There are no pagination inconsistencies in Defendant Danz's declaration. *See* Doc. 81-3 at 18-19. However, Defendant Robles' and Defendant Ramirez's declarations contain inconsistent pagination calling into question the actual content of what information each actually reviewed and signed off on by each Declarant. For example, Defendant Ramirez's signature is on page 13 of the document. *See* Doc. 81-4 at 14. However, the prior page of his declaration is also page 14. *See id*. at 13. Likewise, Defendant Robles' signature is on page 14 of the document. *See* Doc. 81-5 at 15. However, the prior page of his declaration is also page 14. *See id*. at 14. Given the pagination inconsistencies, whether the documents reviewed and signed off by these Defendants are the exact same documents filed with this Court is uncertain. Given the suspect pagination, these declarations should be disregarded in their entirety. Alternatively, Defendants should be required to show cause why the declarations should not be disregarded in their entirety and be required to produce electronic copies of the complete declarations and signature pages, with metadata intact declarations showing the timing of all revisions and why Plaintiff should not be afforded limited discovery regarding the signing, timing and content of these declarations at Defendants' expense.

**Undisclosed Evidence**

Plaintiff requested that Defendants Danz and Robles provide information regarding what crimes they thought they had probable cause for at the time they arrested Ms. DeArmond, as well as what crimes they now think they had probable cause for arrest. Both declined to answer the interrogatories citing attorney-client privilege. *See* Ex. H, Danz Interrogatory Responses; Ex. I, Robles Second Interrogatory Responses. Defendant Danz's response to Plaintiff's interrogatory Number 1, requesting all laws he believed he had probable cause for arresting Plaintiff refers to his deposition and further makes an "attorney work product privilege" objection. In his deposition, Danz testified that he believed he had probable cause to arrest Plaintiff for "human trafficking" because:

> A The basis would be that she went ahead -- we were there solely for trafficking prostitutes. And we are really ultimately trying to find juveniles that are being sexually trafficked.
> There are parts of the transaction. And one of the parts are the prostitute being delivered to the hotel. And that would be one element of the trafficking of the -- of the trafficking of the human being or the prostitution sting or operation. At that point, I believe that as we went out with her -- obviously, we would want to get some more facts. But given that information there, I think we had enough to detain her.

(Danz dep. at 48:20-49:7). Now, in his declaration, he abandons the "human trafficking" charge and claims that he had probable cause to arrest Plaintiff for "pimping" or for being a "party to the crime." Doc. 81-3, ¶¶ 44-46. He further

refused to answer Interrogatory No. 2, requesting whether he now believed he had probable cause to arrest Plaintiff for any other legal violation, objecting that it seeks a "legal conclusion and invades the attorney work product privilege." Ex. H, Danz Interrogatory Responses.

As for Robles, he too deferred to his deposition transcript, without identifying the law by code or statute and objected to the interrogatory on privilege grounds. *See* Ex. I, Robles Second Interrogatory Responses, No. 1. In his deposition, he too described the crime of "trafficking of persons for labor or sexual servitude," O.C.G.A. § 16-5-46, claiming plaintiff transported a person "from one location to another for the purposes of servitude or sex crime." (Robles dep. at 61:14-18). Now, just like Danz, he claims that he had probable cause to arrest Plaintiff for "pimping" or for being a "party to the crime." Doc. 81-5, ¶¶ 34-36. And, just like Danz, he further refused to answer the Interrogatory requesting whether he now believed he had probable cause to arrest Plaintiff for any other legal violation, objecting that it seeks a "legal conclusion and invades the attorney work product privilege." *See* Ex. I, Robles Second Interrogatory Responses, No. 2.

Neither Danz nor Robles should be permitted to make factual allegations in support of summary judgment that they refused to produce during discovery on privilege grounds. "Those who choose to remain silent 'must bear the consequence

7

of a lack of evidence.'" *Arango v. United States Dep't of the Treasury*, 115 F.3d 922, 927 (11th Cir. 1997) (regarding Fifth Amendment privilege assertion); *see also, United States v. Workman*, 138 F.3d 1261, 1263-64 (8th Cir. 1998) (finding party cannot "selectively" claim attorney-client privilege, prohibiting discovery into substance of legal advice and subsequently assert legal advice as a defense); *Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001) (permitting party to testify as to evidence previously claimed privileged "would be tantamount to allowing [the Defendant] to avoid discovery altogether"). The specific charges Defendants believed they could have probable cause to arrest Plaintiff for, or the charges they believed at the time they encountered Plaintiff are factual issues. The Defendants are certified law enforcement officers who should be able to factually provide the requested information; this is not a work product protected information but a law enforcement determination of the charges they believe could be levied against Plaintiff. Defendants should not be permitted to use privilege assertions as both a shield and a sword and the undisclosed facts should be excluded from consideration at summary judgment.

Further, Defendant Robles refused to disclose details of the operation and the roles of individuals in response to Plaintiff's first interrogatory to him. (Ex. D, Robles Interrogatory Response, 9/04/20). He claimed the interrogatory sought "the

8

divulgence of information related to the techniques of law enforcement in a sensitive and on-going national sting operation spear-headed by the" FBI. (*Id*.). He further stated that, "there are grave public policy concerns associated with the dissemination of plans and techniques related to the FBI's undercover operation occurring in Cobb County, Georgia on October 12, 2017. Meanwhile, the specific plans and techniques associated with the October 12, 2017 operation would have minimal relevance to the central question of whether Defendants are entitled to qualified immunity for their 10- minute investigatory stop of Plaintiff DeArmond." (*Id*.). Now, Defendants claim detailed knowledge of how the undercover agents worked inside the hotel and their processes for contacting purported prostitutes to come to the hotel. Having failed to disclose this information, providing any basis for personal knowledge of this information, and expressly stating it has "minimal relevance" to the issues in this case, this evidence should be excluded. Specifically, all references to how the operation worked with the exception of the radio communications to Defendants regarding the drivers, which was their sole job that evening, to work outside in the perimeter.

Finally, Defendants attached to their motion "Exhibit E" which appears to be the sentencing documents regarding Ms. Bobby Strong. This exhibit and all information therein should be excluded for at least two reasons. First, the

documents were never disclosed during the discovery period in this matter; in fact, the certification date on the first page is May 20, 2021. Having failed to disclose the documents, Defendants should not be permitted to use the same to support its motion. Second, none of these documents were in existence at the time of Defendants' encounter with Ms. DeArmond, could not possibly have been relied upon by Defendants in violating Plaintiff's Fourth Amendment rights and as such, are wholly irrelevant to the events at issue in this matter.

Respectfully submitted this 23rd day of June 2021,

**Lisa C. Lambert**
Lisa C. Lambert
Georgia Bar No. 142135
245 N. Highland Avenue
Suite 230-139
Atlanta, Georgia 30307
404.556.8759
lisa@civil-rights.attorney

*Attorney for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using 14-point Times New Roman font.

    **Lisa C. Lambert**
Lisa C. Lambert
Georgia Bar No. 142135

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed Plaintiff's Motion to Exclude Contradictory Testimony, Unreliable Testimony, and Undisclosed Evidence with the Clerk of Court using the CM/ECF system that will cause service by electronic mail to all attorneys of record.

This 23rd day of June 2021,

    **Lisa C. Lambert**
Lisa C. Lambert
Georgia Bar No. 142135