# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SHARON DEARMOND,

      **Plaintiff,**

v.

**OFFICER ROBLES, LT. DANZ,**
**and LT. RAMIREZ,**

      **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:19-CV-4598-MHC**

## ORDER

This case comes before the Court on Plaintiff Sharon DeArmond

("DeArmond")'s Motion for Partial Summary Judgment ("Pl.'s MPSJ") [Doc. 90]

and Defendants' Motion for Summary Judgment ("Defs.' Mot. for Summ. J.")

[Doc. 81] filed by Officer Robles ("Robles"), Lt. Danz ("Danz"), and Lt. Ramirez

("Ramirez") (collectively, "Defendants"). Also before the Court are Plaintiff's

Motion to Exclude ("Pl.'s Mot. to Exclude") [Doc. 96] and Defendant Ramirez's

Motion to Substitute Corrected Version of Declaration ("Mot. to Substitute") [Doc.

97].[1]

---

[1] In order to make a correction as to Ramirez's background information in
Paragraph 3 of his declaration, the Motion to Substitute seeks to substitute a

# I.  BACKGROUND[2]

This case arises from the alleged unlawful search and seizure of DeArmond

and her belongings, which was conducted by Defendants, acting in their capacity

---

revised Declaration of Kelvin Ramirez ("Ramirez Decl.") [Doc. 97-2 at 5-18] in place of the originally-filed one [Doc. 81-4]. Br. in Supp. of Mot. to Substitute [Doc. 97-1]. The corrected facts in the declaration serve as background information only and do not affect this Court's analysis. See id. ¶ 10. Moreover, DeArmond did not respond to the Motion to Substitute, indicating that it is unopposed. See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"); LR 7.1B, NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). Accordingly, Ramirez's Motion to Substitute is **GRANTED**, and any reference to the Ramirez Declaration herein, unless otherwise specified, is a reference to the Declaration of Kelvin Ramirez [Doc. 97-2 at 5-18] filed in conjunction with the Motion to Substitute.

[2] At the outset, the Court notes that as this case is before it on the parties' cross motions for summary judgment, the Court views the evidence presented by the parties in the light most favorable to the non-movants and has drawn all justifiable inferences in favor of the non-movants. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Rsch., Inc., 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of facts that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number). LR 56.1B(1), NDGa. Further, the Court accepts as admitted those facts in Plaintiff's Statement of Material Facts in Support of Summary Judgment ("Pl.'s SMF") [Doc. 90-1] and Defendants' Statement of Material Facts ("Defs.' SMF") [Doc. 105-2] that have not been specifically controverted with citation to the relevant portions of the record. See LR 56.1B(2), NDGa; Defs.' Resp. to Pl.'s SMF [Doc. 93]; Pl.'s Resp. to Defs.' SMF [Doc. 95-2].

as law enforcement officers employed by the Cobb County Police Department. Compl. [Doc. 1].

On October 12, 2017, a multi-jurisdictional law enforcement task force, including law enforcement officers assigned to the Marietta-Cobb-Smyrna ("MCS") law enforcement unit, conducted an operation that took place in Cobb County, Georgia (the "Operation"). Pl.'s Resp. to Defs.' SMF ¶¶ 17-18, 27-28. The purpose of the Operation was to combat human sex trafficking. Id. ¶ 42; Dep. of Bruce Danz (Nov. 16, 2020) ("Danz Dep.") [Doc. 83] at 30. The law enforcement officers assisting in the Operation included Ramirez, who was assigned to the MCS Cobb County Gang Enforcement Unit, as well as Danz and Robles, who were assigned to the MCS narcotics unit. Pl.'s Resp. to Defs.' SMF ¶¶ 17-18, 27-28, 31. Danz and Ramirez supervised a number of uniformed officers during the Operation. Danz Dep. at 34. Defendants, all in uniform and operating in marked law enforcement vehicles, were tasked with providing uniformed support for the Operation, which included, among other things, detaining drivers suspected of being pimps or human traffickers. Pl.'s Resp. to Defs.' SMF ¶¶ 20, 30.

On the same day, DeArmond was working in Cobb County, Georgia, as a driver for Uber, a rideshare service. Defs.' Resp. to Pl.'s SMF ¶ 1. DeArmond

picked up a rider in Marietta, Georgia, and DeArmond dropped the rider off at her

designated location, Extended Stay America, 2225 Interstate North Parkway SE,

Atlanta, Georgia, at approximately 9:00 p.m. Id. ¶ 2. The rider, later identified as

Bobby Strong ("Strong"), exited DeArmond's vehicle and entered the hotel.

Written Statement of Sharon E. DeArmond (Oct. 17, 2017) ("DeArmond

Statement") [Doc. 90-3] at 2; Danz Dep. at 39-41; Incident/Investigation Report,

Case # 17-098624 ("Arrest Report") [Doc. 89 at 237-241] at 3. Once inside the

hotel, Strong brokered a deal with undercover law enforcement officers for sex and

was arrested for prostitution. Arrest Report at 3.

After DeArmond dropped Strong off, she drove to a nearby parking lot,

parked her car, and stepped outside to smoke a cigarette. DeArmond Statement at

2. While DeArmond was smoking outside of her car, several law enforcement

officers, including Defendants, arrived in marked vehicles with their emergency

lights activated, exited the vehicles, and approached DeArmond. Id.; Def. Collin

Robles's Body Camera Video (Oct. 12, 2017) ("Robles Body Cam") [Doc. 91] at

21:19:38-47; Def. Bruce Danz's Dash Camera Video [Doc. 91] at 9:14:00-30. As

he approached, Robles unholstered his service weapon and ordered DeArmond to

put her hands up and turn around. DeArmond Statement at 2; Robles Body Cam at

21:19:38-47; Pl.'s Resp. to Defs.' SMF ¶ 61. Robles and Cobb County Sheriff's

Deputy Adam Redish ("Redish") then placed DeArmond in handcuffs and patted her down. Robles Body Cam at 21:19:47-21:20:25; Dep. of Adam Redish (Dec. 11, 2020) [Doc. 85] at 29; Dep. of Collin Robles (Dec. 11, 2020) ("Robles Dep.") [Doc. 86] at 34. One of the law enforcement officers asked DeArmond what she was doing in the area, and she responded that she drives for Uber and had just stopped to have a cigarette. Robles Body Cam at 21:20:30-36. DeArmond explained that she had credentials on her phone showing that she was an Uber driver, and Robles remarked that DeArmond had stickers indicating that she drove for Uber and Lyft, another rideshare service, on her vehicle. Id. at 21:20:36-59.

The law enforcement officers on the scene placed DeArmond in the back seat of Robles's vehicle and drove her to another location at 180 Interstate North Parkway, Atlanta, Georgia, approximately 0.60 miles away from their initial encounter. Pl.'s Resp. to Defs.' SMF ¶ 66. In addition, Danz ordered Cobb County Sheriff's Deputy Jose Cadena ("Cadena") to drive DeArmond's vehicle to the second location. Id. ¶ 65.

At the second location, Danz obtained DeArmond's name and date of birth, and he asked DeArmond again why she was in the area. Def. Bruce Danz's Body Camera Video (Oct. 12, 2017) ("Danz Body Cam") [Doc. 91] at 21:20:13-34. DeArmond explained that she had just dropped off an Uber rider and was smoking

a cigarette between rides. Id. at 21:20:34-46. Danz asked if DeArmond had any credentials to support her story, and she showed Danz the Uber application on her phone which indicated that she had, in fact, just completed a ride. Id. at 21:20:46-21:22:02. Danz instructed the other law enforcement officers to take DeArmond out of handcuffs and then briefly walked away to his vehicle. Id. at 21:21:55-21:22:40. When Danz returned to DeArmond, Robles indicated that everything had been explained to DeArmond, and Danz told DeArmond that she was free to leave. Id. at 21:23:15-21:24:40.

On October 11, 2019, DeArmond filed the above-styled action based on the foregoing events, alleging claims under 42 U.S.C. § 1983 for illegal detention, search, and seizure in violation of the Fourth Amendment (Count I) and false arrest/false imprisonment under O.C.G.A. §§ 51-7-1, 51-7-20, and 51-7-22 (Count II). Compl. ¶¶ 53-74. DeArmond also seeks attorney's fees under O.C.G.A. § 13-6-11 (Count III). Id. ¶¶ 75-77.

## II. PLAINTIFF'S MOTION TO EXCLUDE

DeArmond seeks to have this Court exclude various evidence which she categorizes as (1) contradictory testimony, (2) unreliable testimony, and (3) undisclosed evidence. Pl.'s Mot. to Exclude. The Court will address each category *seriatim*.

6

## A. Alleged Contradictory Testimony

The Eleventh Circuit has held that when litigation is at the summary judgment stage and "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984); see also Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (holding that a litigant cannot create a genuine issue of material fact "simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."). Citing to Van T. Junkins, DeArmond argues that this Court should exclude statements from the Ramirez Declaration and the Robles Declaration because those statements are directly contradicted by Ramirez and Robles's deposition testimony. Mot. to Exclude at 1-4; see also Ramirez Decl.; Decl. of Collin Robles ("Robles Decl.") [Doc. 81-5]. This Court disagrees.

DeArmond first takes issue with a portion of the Ramirez Declaration which states:

> At the moment we approached Plaintiff, we had probable cause to arrest her for [a] violation of O.C.G.A. § 16-6-11, Pimping, as we knew *at*

7

*that time*, she transported another person to a place for the purpose of prostitution.

. . .

At the time we approached Plaintiff, we had probable cause to arrest her for violation of O.C.G.A. § 16-2-20, Party to the Crime of Prostitution; as we believed *at that time* she was concerned with the commission of a crime, as a party to prostitution, since she drove her passenger to a hotel where the passenger committed prostitution.

. . .

Although probable cause existed, Plaintiff was never taken to [a] detention center to be processed into custody.

Ramirez Decl. ¶¶ 36, 38, 46. DeArmond argues that the statements in the Ramirez Declaration are directly contradicted by the following exchange from Ramirez's deposition:

> Q.   You contend that the interaction with Ms. Dearmond was a Tier 2 stop?
> . . .
> A.   That's Tier 2.
> Q.   Okay. And what was the reasonable suspicion for the Tier 2 stop?
> A.   They arrested the prostitute that she had just dropped off. And her standing nearby, it seemed as if she was waiting for her to conduct - - finish conducting her business upstairs, then to pick her up, as if she was part of the operation - - part of the illegal activity.
> Q.   Okay. So it did not reach Tier 3?
> A.   No, ma'am.

Dep. of Lt. Kelvin Ramirez (Jan. 7, 2021) ("Ramirez Dep.") [Doc. 84] at 47-48.

Ramirez's deposition testimony does not unambiguously contradict the Ramirez Declaration. Ramirez did not define a "Tier 3" stop in his deposition other than responding "[y]es" to counsel's prompt that "when we get to Tier 3,

8

that's an arrest, right?" Ramirez Dep. at 20. Thus, in context, Ramirez's deposition testimony is ambiguous. While his deposition testimony regarding the incident with DeArmond could be interpreted to mean that no probable cause existed, it could also be interpreted as testimony that the officers' actions did not amount to an arrest. Because Ramirez's deposition testimony does not clearly and directly contradict the Ramirez Declaration, the Court declines to exclude this evidence.

Second, DeArmond argues that Robles's deposition testimony contradicts the Robles Declaration. In particular, DeArmond points to the following exchange from Robles's deposition:

> Q.    Okay. Now for this specific operation on October 12, 2017, were you provided any training for the operation?
> A.    No, ma'am.
> Q.    Did you have any briefing for the operation?
> A.    No ma'am.

Robles Dep. at 25. The Robles Declaration states, in pertinent part, "[o]n October 12, 2017, I attended a pre-operation task force meeting at the MCS office regarding my assignment for that evening." Robles Decl. ¶ 8.

Robles's deposition testimony, taken as a whole, does not directly contradict the Robles Declaration. Although Robles denied having any briefing for the Operation, he also testified that he was notified of his role in the Operation

"[e]arlier in the day," and that he discussed the Operation with at least one other

law enforcement officer who was similarly notified. Robles Dep. at 29. It appears

that Robles's testimony may draw a distinction between a briefing for the

Operation and a pre-operation task force meeting. Thus, the Robles Declaration

does not unambiguously contradict his deposition testimony. Accordingly, this

Court declines to exclude Robles's testimony on this point.

Finally, DeArmond requests that this Court exclude the statements in the

Declaration of Bruce Danz ("Danz Decl.") [Doc. 81-3] and the Robles Declaration

that the respective declarants are "aware that non-Uber drivers can hack into

Uber's app and pretend to be Uber drivers for nefarious purposes and that

individuals perpetrating crimes sometimes pretend to be ride share drivers by

putting Uber and Lyft stickers and signs in their motor vehicles." Danz Decl. ¶ 52;

Robles Decl. ¶ 40. DeArmond contends that these statements should be excluded

because neither Danz nor Robles mentioned this knowledge in their respective

depositions; however, DeArmond provides no authority in support of the

proposition that a statement in a declaration must be supported by testimony in a

deposition. See Pl.'s Mot. to Exclude at 3-4. Nothing in either the Robles

Deposition or the Danz Deposition directly contradicts their statements in the

declarations, and DeArmond has provided no justification for excluding these

statements, particularly given that DeArmond's counsel did not address this topic when questioning Danz and Robles. Accordingly, the Court declines to exclude statements in the Robles Declaration and the Danz Declaration, and Plaintiff's Motion to Exclude is **DENIED** as to the alleged contradictory testimony.

B. **Alleged Unreliable Testimony**

DeArmond also argues that this Court should disregard the Ramirez Declaration and the Robles Declaration (collectively, the "Declarations") in their entirety because the declarations contain apparent typographical errors in their page numbering. Mot. to Exclude at 4-5. DeArmond asserts that the inconsistencies in page numbers call into question the actual content of the Declarations because it is unclear what content Ramirez and Robles actually reviewed and approved. Id.

Even if the pagination issues did, as DeArmond contends, call the reliability of the Declarations into question, Defendants have remedied sufficiently any deficiency. Specifically, the Ramirez Declaration submitted in conjunction with Ramirez's Motion to Substitute does not contain the alleged pagination error.[3] In

---

[3] Notably, DeArmond's Motion to Exclude appears to include its own typographical error in its description of the Ramirez Declaration. Pl.'s Mot. to Exclude at 5 ("Ramirez's signature is on page 13 of the document . . . [h]owever, the prior page of his declaration is also page 14."). The Court assumes, however,

response to the Motion to Exclude, Defendants also filed the Declaration of Collin Robles (the "Second Robles Decl.") [Doc. 100-5]. The Second Robles Declaration states, in pertinent part, that "[t]he declaration signed by [Robles] on May 27, 2021, and submitted to the Court on June 2, 2021 is true and correct." Second Robles Decl. ¶ 2. The Court finds that the Second Robles Declaration sufficiently allays any concerns raised by the pagination error in the Robles Declaration. Accordingly, DeArmond's motion is **DENIED** as to the alleged unreliable testimony.

### C.   Undisclosed Evidence

DeArmond also seeks to exclude evidence which she argues was not properly disclosed in discovery. Pl.'s Mot. to Exclude at 6-10. DeArmond argues that Defendants failed to properly disclose (1) information regarding what crimes Danz and Robles believed they had probable cause to charge DeArmond with at the time they initially encountered her, (2) details of the Operation and the roles of involved individuals, and (3) the sentencing documents regarding Strong. The Court will discuss the circumstances of each alleged failure to disclose evidence individually.

---

that DeArmond intended to point out that the originally-filed Ramirez Declaration [Doc. 81-4] numbered both the signature page and the preceding page as 13.

### 1. Individual Beliefs Regarding Probable Cause

DeArmond served both Danz and Robles with interrogatories, one of which stated, in pertinent part:

> At your deposition, you testified that you believed you had probable cause to arrest Plaintiff Sharon DeArmond when you first approached her in the restaurant parking lot; please identify all laws you believed you had probable cause to arrest her for *at that time*, by title and code or statute numbers.

Def. Danz's Objs. and Resps. to Pl.'s Second Interrogs. ("Danz Resp.") [Doc. 96-1] ¶ 1; Objs. and Resps. to Pl.'s Second Interrogs. to Def. Robles ("Robles Resp.") [Doc. 96-2] ¶ 1. In response, Danz and Robles objected to the interrogatory as "asked and answered," in their respective depositions and on the basis of attorney-client privilege. Danz Resp. ¶ 1; Robles Resp. ¶ 1. Danz and Robles both testified in their depositions that they believed they had probable cause to arrest DeArmond for "human trafficking" at the time they initially approached her. See Danz Dep. at 48; Robles Dep. at 61-62. However, in their declarations, both Danz and Robles state that at the moment they approached DeArmond, they had probable cause to arrest her for violations of O.C.G.A. § 16-6-11, Pimping, and O.C.G.A. § 16-2-20, Party to the Crime of Prostitution. Danz Decl. ¶¶ 44, 46; Robles Decl. ¶¶ 34, 36.

DeArmond argues that it is now improper, after asserting attorney-client privilege, for Danz and Robles to submit in their declarations that they had

probable cause for the specific offenses listed. Pl.'s Mot. to Exclude at 6-8.

Defendants do not directly respond to DeArmond's argument that they failed to

sufficiently answer the above interrogatory.[4] See Defs.' Resp. in Opp'n to Pl.'s

Mot. to Exclude [Doc. 100] at 9-12. Instead, Defendants emphasize that "it is the

*facts* known to [Defendants] that matter; not the *legal conclusion* to be drawn from

those facts." Id. at 10. Defendants also state that "[w]hat Defendants subjectively

thought (or did not think) about the potential charges is not 'evidence' . . . .") Id. at

11. This Court agrees. See Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)

(stating that courts apply an objective standard to determine whether arguable

probable cause exists and do not consider the officer's underlying intent or

motivation); see also Rushing v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010)

(citation and punctuation omitted) ("The standard [for qualified immunity] is an

objective one, and therefore does not include an inquiry in the officers' subjective

intent or beliefs.").

---

[4] The Court notes Defendants' contention that Robles's testimony sufficiently
alerted DeArmond to his belief that he had probable cause for violations of
O.C.G.A. §§ 16-6-11 and 16-2-20; however, this does not explain the decision not
to disclose the specific Code sections in the Robles Declaration in either Robles's
deposition or his response to interrogatories. See Defs.' Resp. in Opp'n to Pl.'s
Mot. to Exclude at 11-12.

Accordingly, the Court **GRANTS IN PART** DeArmond's Motion to Exclude. The Court will exclude Robles's and Danz's statements as to their subjective beliefs regarding the existence of probable cause for specific offenses; however, to the extent DeArmond requests this Court exclude Defendants' testimony as to their knowledge of particular facts which may establish probable cause, the DeArmond's Motion to Exclude is **DENIED**.

### 2.    Refusal to Disclose Operational Details

Additionally, DeArmond takes issue with Robles's response to an interrogatory regarding the details of the Operation. Pl.'s Mot. to Exclude at 8-9. The interrogatory stated, "[p]lease describe in detail the assignments, roles and duties with regard[] to the special operation or sting operation on the evening of October 12, 2017 for yourself and the officers identified in response to Interrogatory Number 1." Objs. and Resps. to Pl.'s Interrogs. to Def. Robles [Doc. 95-4] ¶ 2. Robles objected to the interrogatory as not proportional to the needs of the case and calling for "the divulgence of information related to the techniques of law enforcement in a sensitive and on-going national sting operation spear-headed by the Federal Bureau of Investigations." However, DeArmond fails to mention that, subject to Robles's objection, Robles also responded that "he and the law enforcement personnel listed in response to Interrogatory No. 1 were members of

15

the multi-agency Marietta Cobb Smyrna (MCS) Task Force who were providing assistance to the FBI on October 12, 2017, by making contact with drivers who dropped off the targets of human/trafficking/child sex trafficking so as to determine the driver's involvement with the target in human/trafficking/child sex trafficking [sic]." Id.

DeArmond argues that, despite a refusal to provide the information earlier, "Defendants claim detailed knowledge of how the undercover agents worked inside the hotel and their processes for contacting purported prostitutes to come to the hotel." Pl.'s Mot. to Exclude at 9. DeArmond's argument ignores the latter part of Robles's response to the interrogatory, and she does not specify what testimony or evidence outside the scope of Robles's response should be excluded. Instead, and without any supporting authority, she requests a blanket exclusion of "all references to how the operation worked with the exception of the radio communications to Defendants regarding the drivers . . . ." Id. DeArmond's selective quotation of Robles's objection is not sufficient to justify any exclusion, let alone such a broad exclusion. Accordingly, DeArmond's Motion to Exclude information related to the details of the Operation is **DENIED**.

### 3.    Non-Disclosure of Bobby Strong's Court Records

Finally, DeArmond seeks to have this Court exclude court documents which Defendants filed in support of their motion to dismiss that relate to the disposition of Strong's arrest. Pl.'s Mot. to Exclude at 9-10; see also Plea and Sentencing Order, State of Georgia v. Bobby Strong, No. 17-M-5204 (State Ct. of Cobb Cnty. Jan. 8, 2018) (the "State Court Documents") [Doc. 81-7]. DeArmond argues that because the State Court Documents were not properly disclosed in discovery, Defendants should be barred from using them in support of their motion. Pl.'s Mot. to Exclude at 9-10. DeArmond additionally argues that the State Court Documents should be excluded because they were produced after the Operation and are, accordingly, irrelevant to the determination of whether Defendants acted lawfully. Id.

Defendants contend that the State Court Documents do not fall under any of DeArmond's discovery requests, but they do not rebut DeArmond's argument that they are not relevant to the assessment of Defendants' actions. Defs.' Resp. in Opp'n to Pl.'s Mot. to Exclude. To the contrary, it appears the parties agree that "should the Court opt to exclude consideration of [the State Court Documents], the exclusion will not impact the objective probable cause standard." Id. This Court need not determine whether the State Court Documents fell within the scope of

discovery because the parties agree that the State Court Documents are not relevant to the issues currently before the Court. Accordingly, DeArmond's Motion to Exclude is **GRANTED** as to the State Court Documents which this Court deems irrelevant to the issues before it.

## III.   LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence demonstrating a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law.  Celotex, 477 U.S. at 324.  In

18

determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. <u>Anderson</u>, 477 U.S. at 255; <u>see also</u> <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. <u>Anderson</u>, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u> "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." <u>Herzog</u>, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. <u>Matsushita</u>, 475 U.S. at 587.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. DeArmond's Fourth Amendment Claims Under 42 U.S.C. § 1983 (Count I)

Although they do not "concede" that the interaction between Defendants and DeArmond constituted an "arrest" under the Fourth Amendment, Defendants contend that they did not violate the Fourth Amendment because they had probable cause to arrest her and seize her belongings. Br. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Br.") [Doc. 81-1] at 9-20. In the alternative, Defendants

19

contend they are entitled to qualified immunity. Id. at 20-26. Because the application of qualified immunity could be dispositive of DeArmond's federal claims, and the discussion involving the application of qualified immunity involves consideration of whether Defendants had probable cause to arrest DeArmond, the Court will analyze qualified immunity first.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To claim qualified immunity, a defendant must first show he was performing a discretionary function. Moreno v. Turner, 572 F. App'x 852, 855 (11th Cir. 2014) (citing Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009)). There is no dispute that Defendants were acting in the scope of their discretionary authority in this case. See Defs.' Br. at 22 n.10; see also Lee, 284 F.3d at 1194 ("In this case, there can be no doubt that Ferraro was acting in his discretionary capacity when he arrested Lee."); Cottam v. City of Wildwood, 750 F. App'x 791, 793 (11th Cir. 2018) (finding that the officer "was acting within the scope of his discretionary authority when he stopped and arrested" the plaintiff).

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)). A plaintiff demonstrates that qualified immunity does not apply by showing: "(1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation." Kobayashi, 581 F.3d at 1308. A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Vaughan v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "When we consider whether the law clearly established the relevant conduct as a constitutional violation at the time that [the government official] engaged in the challenged acts, we look for 'fair warning' to officers that the conduct at issue violated a constitutional right." Jones v. Fransen, 857 F.3d 843, 851 (11th Cir. 2017) (citing Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc)).

### 1. Whether Defendants' Actions Constituted an Arrest of DeArmond

The Fourth Amendment provides that a person has a right to be free from unreasonable searches and seizures. U.S. Const. Amend. IV. However, not all encounters between law enforcement and citizens implicate the scrutiny of the

Fourth Amendment. The United States Court of Appeals for the Eleventh Circuit

has "characterized encounters between police and citizens into three types, with

varying levels of Fourth Amendment scrutiny: "(1) police-citizens exchanges with

no coercion or detention; (2) brief seizures or investigative detentions; and (3) full-

scale arrests." United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011)

(citing United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006)).

> The first category of police-citizen encounters fails to implicate fourth
> amendment scrutiny. The second category, investigative detentions,
> involves reasonably brief encounters in which a reasonable person
> would have believed that he or she was not free to leave. In order to
> justify a fourth amendment seizure, the government must show a
> reasonable and articulable suspicion that the person has committed or
> is about to commit a crime. Finally, if the totality of circumstances
> indicates that an encounter has become too intrusive to be classified as
> an investigative detention, the encounter is a full-scale arrest, and the
> government must establish that the arrest is supported by probable
> cause.

United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989) (internal

citations omitted). Here, the parties dispute whether Defendants' actions constitute

an investigative detention pursuant to Terry v. Ohio, 392 U.S. 1, 30 (1968), or a

full-scale arrest of DeArmond. See Defs.' Br. at 9 n.5; Pl.'s Resp. in Opp'n to

Defs.' Mot. for Summ. J. [Doc. 95] at 12-15. The existence of a potential

constitutional violation, and whether qualified immunity applies, hinges upon whether DeArmond was, in fact, arrested.[5]

"No brightline test separates an investigatory stop from an arrest." United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995). To determine when a brief seizure turns into an arrest, courts look to the "totality of circumstances" and the "particular facts involved in an incident." United States v. Vasquez-Ortiz, 344 F. App'x 551, 553 (11th Cir. 2009) (citations omitted). "We have recognized a non-exclusive list of factors that may indicate an arrest: 'the blocking of an individual's path or the impeding of his progress; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual.'" Id. at 553-54 (citing Hastamorir, 881 F.2d at 1556). Courts also consider "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, [and] the scope and intrusiveness of the detention[.]" United States

---

[5] Although DeArmond initially alleged that "Defendants had no reasonable suspicion to detain Plaintiff," Compl. ¶ 56, it appears she has abandoned that claim and concedes that Defendants had sufficient evidence to detain her. See Pl.'s MPSJ at 12 (emphasis added) ("Defendant Officers escalated what should have been a two-minute Tier 2 investigatory stop into an arrest and seizure of [Plaintiff's] property – taking Plaintiff and her vehicle to a second, secluded location.")

v. Acosta, 363 F.3d 1141, 1146 (11th Cir. 2004) (quotation and citations omitted). "[A] government officer effects a seizure by means of a show of authority where the officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement, and those words and actions actually produce his stop." United States v. House, 684 F.3d 1173, 1199 (11th Cir. 2012) (citation and quotation marks omitted).

### a.    Handcuffing DeArmond

First, DeArmond contends that handcuffing her was unnecessary and exceeded the bounds of a valid investigative stop. Pl.'s MPSJ at 12-13. Viewing the facts in the light most favorable to DeArmond, she was approached by multiple law enforcement officers, at least one of whom had his firearm unholstered, and ordered to place her hands up. Robles Body Cam at 21:19:39-48; Robles Dash Cam at 9:14:24-30. DeArmond was handcuffed within seconds and patted down for weapons. Robles Body Cam at 21:19:45-21:21:18; Robles Dash Cam at 9:14:30-9:15:45. This initial detention lasted less than two minutes. Robles Body Cam at 21:19:45-21:21:15.

> [The] Supreme Court carved out a narrow exception to the probable cause requirement, allowing police to detain a suspect based upon reasonable suspicion for the purpose of an investigative detention[]. In order to justify a fourth amendment seizure, the government must show a reasonable and articulable suspicion that the person has committed or is about to commit a crime.

24

Hastamorir, 881 F.2d at 1556 (citing Terry, 391 U.S. 1). The Eleventh Circuit has held that even handcuffing or pointing a firearm at a suspect may qualify as "reasonable action designed to provide for the safety of the agents" without converting a detention into an arrest. Id. at 1556-57; see also United States v. Gil, 204 F.3d 1347, 1350 (11th Cir. 2000) (finding that investigative detention did not ripen into a full arrest where the defendant was handcuffed for seventy-five minutes in a police car); United States v. Aldridge, 719 F.2d 368, 371 (11th Cir. 1983) ("[A]n officer's display of a weapon [does not] necessarily convert an investigative stop into an arrest.").

Danz testified that Defendants were advised over the radio that DeArmond had dropped off an individual at Extended Stay America who then accepted an offer of money in exchange for sex, and Defendants were notified that DeArmond remained in the area nearby. Danz Dep. at 40. Danz also testified that it was standard procedure to handcuff DeArmond immediately because in that situation "a lot of times . . . it is violent gangs that run these organizations . . . . And from a safety standpoint, this is how we were going out with these folks that evening." Id. at 54. Similarly, Robles testified that handcuffing DeArmond was standard procedure based on the threat associated with individuals suspected to be involved in pimping or human trafficking. Robles Dep. at 42-44. Viewing the evidence in a

light most favorable to DeArmond, the Court finds that Defendants had a sufficient reasonable, articulable suspicion that DeArmond was involved in a criminal activity to justify her initial detention. Moreover, based on Defendants' statements regarding the threat served by individuals suspected to be involved in human trafficking, the initial handcuffing and patdown of DeArmond, lasting less than two minutes, did not amount to an arrest.

### b. Transporting DeArmond and Her Vehicle

However, the Court finds Defendants' act of transporting DeArmond and her vehicle to a secondary location does constitute an arrest. It is undisputed that Defendants placed DeArmond in the back of Robles's patrol vehicle shortly after handcuffing her and patting her down. Robles Body Cam at 21:19:45-21:21:18; Robles Dash Cam at 9:14:30-9:15:45. Defendants then transported DeArmond to a secondary location for further investigation before releasing her. Robles Dash Cam at 9:15:55-9:17:55; Danz Body Cam at 21:20:14-21:24:40. In addition, Cadena drove DeArmond's vehicle to the secondary location. Robles Dash Cam at 9:15:55-9:17:55. The entire encounter lasted less than ten minutes. Id. at 9:14:15-9:23:31.

These undisputed facts indicate that an arrest took place when DeArmond was transported to another location following the initial investigative detention.

The Eleventh Circuit has held that similar conduct exceeds the bounds of an investigative detention. In United States v. Virden, 488 F.3d 1317, 1321 (11th Cir. 2007), the Eleventh Circuit addressed whether law enforcement officers exceeded the scope of a valid investigative stop when they handcuffed a suspect and transported him, along with his automobile, to a secondary location so that the target of the investigation would not detect their presence and in order to have a canine unit conduct a drug sniff. Id. at 1320. The court held:

> The seizure here was unreasonable absent probable cause because of its scope and intrusiveness. While not unduly lengthy, the seizure was accomplished by the taking of Virden's vehicle to a new location for the purposes of investigation. We have frowned upon the movement of individuals for such purposes. See United States v. Hardy, 855 F.2d 753, 760-61 (11th Cir. 1988); Hayes v. Florida., 470 U.S. 811, 816 [] (1985) ("Our view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes."). Furthermore, to effectuate this seizure the officers handcuffed Virden, and without formally arresting him, drove him to another location. Such a seizure exceeds the boundaries of a Terry stop.

Id. at 1321 (alterations accepted). Based on the similar scope and intrusiveness of Defendants' actions here, the Court finds that Defendants effected an arrest of DeArmond. Compare United States v. Torres-Bonilla, 556 F. App'x 875, 879 (11th Cir. 2014) (finding that the initial detention of the defendant during which an officer did not place him in handcuffs or move him to another location was not an

27

arrest, and distinguishing <u>Virden</u>, where "handcuffing the defendant and driving him to another location was 'unreasonable absent probable cause because of its scope and intrusiveness.'").

## 2. Whether DeArmond's Arrest Was Lawful

Because the encounter ripened into an arrest of DeArmond, the Court will examine whether there was arguable probable cause for the arrest. "Law enforcement violates a person's Fourth Amendment rights when it arrests him or her without probable cause, and a claim arises under § 1983." <u>Rushing</u>, 599 F.3d at 1265. However, "probable cause constitutes an absolute bar to both state and § 1983 claims alleging false arrest" and false imprisonment. <u>Rankin v. Evans</u>, 133 F.3d 1425, 1435 (11th Cir. 1998). "For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances." <u>Wood v. Kessler</u>, 323 F.3d 872, 878 (11th Cir. 2003) (internal punctuation and quotation marks and citation omitted); <u>see also</u> <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 734 (11th Cir. 2010) ("Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."). "If an officer has probable cause to believe that an individual has committed even a very minor criminal

offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Jeanty v. City of Miami, 876 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)).

"In the context of § 1983 claims, however, an officer may be entitled to qualified immunity even if there was no actual probable cause for the arrest; instead, an officer who raises a qualified immunity defense will prevail if there was arguable probable cause." Cozzi v. City of Birmingham, 892 F.3d 1288, 1293-94 (11th Cir. 2018) (citation omitted). "In wrongful arrest cases, we have defined the 'clearly-established' prong [for purposes of applying qualified immunity] as an 'arguable probable cause' inquiry." Moran v. Cameron, 362 F. App'x 88, 93 (11th Cir. 2010).

Arguable probable cause is to be assessed "based on the information known to [the] defendant[] at the pertinent times." Shew v. Horvath, 712 F. App'x 949, 952 (11th Cir. 2017) (quoting Marx, 905 F.2d at 1507). The Court should ask whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Grider v. City of Auburn, 618 F.3d 1220, 1257 (11th Cir. 2010) (citation omitted). Because arguable probable cause looks to whether the arresting officer's actions were objectively reasonable, the officer's underlying intent or

motivation is irrelevant. Lee, 284 F.3d at 1195. This standard acknowledges that "law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quotation marks and citation omitted, alterations accepted). Whether an arresting officer possesses arguable probable cause depends on the elements of the alleged offense and the facts of the case. Skop v. City of Atlanta, 485 F.3d 1130, 1137-38 (11th Cir. 2007). "Showing probable cause does not, however, require proving every element of a crime. . . . If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply." Brown, 608 F.3d at 735. "When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990).

DeArmond argues that Defendants lacked probable cause for her arrest. Pl.'s MPSJ at 15-16. Defendants contend that at the time they approached DeArmond, they had probable cause or arguable probable cause to arrest her for pimping in violation of O.C.G.A. § 16-6-11 (stating that "[a] person commits the offense of pimping when he or she . . . [d]irects or transports another person to a place when he or she knows or should know that the direction or transportation is

for the purpose of prostitution") or party to the crime of prostitution in violation of

O.C.G.A. § 16-2-20 (stating that a person "may be charged with and convicted of

commission of [a] crime . . . if he . . . [i]ntentionally aids or abets in the

commission of the crime . . . ."). Defs.' Br. at 12-14. In particular, Defendants

contend that probable cause or arguable probable cause was established by their

collective knowledge that

> (1) Plaintiff drove and dropped off the target of an FBI undercover
> operation into human trafficking at an Extended Stay hotel; (2) the FBI
> target Plaintiff dropped off proceeded to broker a deal for sex with an
> undercover officer, thereby committing prostitution; (3) Plaintiff did
> not leave the area of the hotel where she dropped off the prostitute but
> moved to an isolated location immediately adjacent to the hotel; and (4)
> based upon their experience, pimps and human traffickers often linger
> and wait to pick up their prostitutes and/or sex-trafficking victims after
> their sexual transactions are complete.

Id. at 12.

Viewed in the light most favorable to Defendants, these facts are insufficient

to establish probable cause or arguable probable cause to arrest DeArmond for the

crimes of pimping or party to the crime of prostitution. "This circuit's case law

has clearly established that mere presence at the scene of a crime, without more,

does not support a finding of probable cause to arrest." Holmes v. Kucynda, 321

F.3d 1069, 1081 (11th Cir. 2003) (citation and quotation omitted, alteration

accepted); see also Ybarra v. Illinois, 444 U.S. 85, 91 (1979) ("[A] person's mere

propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

In <u>United States v. McRoy</u>, the court assessed whether probable cause existed to arrest McRoy for pimping, when he was occupying a vehicle along with a juvenile who was reported missing. <u>United States v. McRoy</u>, No. 1:16-CR-00437-CAP-JFK, 2018 WL 894779, at *6 (N.D. Ga. Jan. 22, 2018), <u>R&R adopted</u>, No. 1:16-CR-437-CAP-JFK, 2018 WL 888728 (N.D. Ga. Feb. 14, 2018). Law enforcement had evidence that the driver of the vehicle had traveled with the missing juvenile and "a third unidentified person" to Washington, D.C. for the purpose of engaging in prostitution. <u>Id.</u> Evidence that human trafficking crimes, including prostitution of the juvenile in the vehicle had been committed, in conjunction with McRoy's close proximity to the individuals involved, still did not establish probable cause to arrest McRoy for pimping. <u>Id.</u>; <u>compare</u> <u>United States v. Daniels</u>, No. 1:13-CR-454-WSD, 2015 WL 533253, at *11 (N.D. Ga. Feb. 9, 2015) (finding probable cause for prostitution where individual admitted to engaging in prostitution and being aided by suspect, suspect matched the physical description and was wearing the clothes she described, suspect was listed as "Daddy" in her cell phone, which indicated he was her pimp based on officer's experience, and suspect was in location described by her).

Defendants assert that their knowledge of the tendency of pimps and human traffickers to stay nearby after transporting individuals involved in prostitution, coupled with DeArmond remaining in the vicinity of Extended Stay America, establishes at least arguable probable cause for pimping. This Court disagrees. A valid charge for pimping under the subsection cited by Defendants requires evidence that DeArmond knew or should have known that she transported Strong for the purpose of prostitution. See of O.C.G.A. § 16-6-11(3). None of the facts known to Defendants at the time of the arrest were probative of this element. Cf., Wells v. State, 268 Ga. App. 62, 62 (2004) (citation omitted) ("Proof of possession, alone, of recently stolen property is not sufficient to establish the essential element of the offense of theft by receiving stolen property that the possessor knew or should have known that the property was stolen."). As with McRoy, DeArmond's behavior was sufficient for a Terry stop and investigative detention. See McRoy, 2018 WL894779, at *5. However, behavior justifying further investigation, alone, cannot be used to justify an arrest without arguable probable cause.

There also is insufficient evidence to establish probable cause or arguable probable cause that DeArmond was a party to the crime of prostitution. Such a charge would require that DeArmond "[i]ntentionally aid[ed] or abet[ted] in the

commission of the crime . . . ." O.C.G.A. § 16-2-20. The underlying crime alleged here is prostitution under O.C.G.A. § 16-6-9, which states: "[a] person . . . commits the offense of prostitution when he or she performs or offers or consents to perform a sexual act . . . for money or other items of value." O.C.G.A. § 16-6-9. Again, at the time of arrest, Defendants had no evidence indicating DeArmond knew that Strong intended to perform sex acts in exchange for money when she arrived at the hotel; thus, DeArmond's transportation of Strong to the hotel and her decision to park nearby do not indicate that she <u>intentionally</u> aided or abetted Strong in the commission of prostitution.

Viewed in the light most favorable to Defendants, DeArmond transported Strong to the hotel and exhibited behavior which is sometimes exhibited by individuals involved in human trafficking. These facts, alone, were sufficient to justify an investigative stop, but not a full-scale arrest. Because Defendants lacked probable cause or arguable probable cause to support their arrest of DeArmond, the seizure of her vehicle, and any alleged search, Defendants are not entitled to qualified immunity.

Based on the previous discussion, Defendants' contention that they had probable cause to arrest DeArmond and seize her personal belongings also fails.

Consequently, Defendants' Motion for Summary Judgment is **DENIED** as to the federal claims in Count I of the Complaint.

## B. DeArmond's False Arrest Claims Under State Law (Count II)

Defendants contend they are entitled in their individual capacities to official immunity from all state law claims raised by Plaintiffs. Defs.' Br. at 26-30. DeArmond, in response, argues that a jury could find that Defendants acted with the malice requisite to overcome official immunity. Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") [Doc. 95] at 24-25.

In relevant part, the Georgia Constitution provides:

> [A]ll officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers . . . shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST., art. I, § 2, ¶ IX(d) (emphasis added). "Stated succinctly, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." Graham v. Cobb Cnty., 316 Ga. App. 738, 742 (2012).

"Under Georgia law, the decisions of law enforcement officers to investigate, detain, arrest, use force, and charge a suspect with a crime are discretionary functions for purposes of official immunity." Thomas v. Cobb Cnty., No. 1:05-CV-2977-CAP, 2009 WL 10696736, at *4 (N.D. Ga. Feb. 20, 2009) (citations omitted). "Thus, the actions taken by [the police detective] in this case were discretionary in nature. Therefore, in order to pierce [the detective's] official immunity, the plaintiff must demonstrate actual malice." Id. (citation omitted).

"Unlike qualified immunity under federal law, we must inquire into [the public agent]'s subjective intent to determine whether he [or she] has official immunity under Georgia law." Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007).

> Actual malice requires <u>a deliberate intention to do wrong</u> and express malice or malice in fact. Actual malice does not include implied malice or the reckless disregard for the rights and safety of others. A deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must <u>be the intent to cause the harm suffered by the plaintiffs</u>. Likewise, "the phrase 'actual intent to cause injury' has been defined in a tort context to mean an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. This definition of intent contains aspects of malice, perhaps a wicked or evil motive."

Selvy v. Morrison, 292 Ga. App. 702, 704-05 (2008) (emphasis added) (quoting Kidd v. Coates, 271 Ga. 33 (1999)) (alteration accepted); see also Adams v. Hazelwood, 271 Ga. 414, 415 (1999) ("Actual malice requires more than harboring

36

bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal.").

DeArmond's assertion that Defendants acted with actual malice is speculative and conclusory and cannot overcome official immunity. See Tops Sales & Servs., Inc. v. City of Forest Park, 487 F. App'x 489, 490 (11th Cir. 2012) (applying official immunity based upon insufficiency of actual malice allegations); Reeves v. Key, No. 5:17-CV-198 (CAR), 2017 WL 3527715, at *10 (M.D. Ga. Aug. 16, 2017) (concluding that the defendant was entitled to official immunity because, aside from a conclusory allegation, the plaintiff "has not alleged any additional facts that would support a finding that [the officer] used an interim control hold with the intent to cause [the plaintiff's son] bodily harm."); Chronister v. Butts Cnty., No. 5:15-CV-150 (MTT), 2016 WL 1735860, at *7 (M.D. Ga. May 2, 2016) ("[B]eyond insufficient conclusory allegations, Chronister has alleged no facts that support a reasonable inference Sheriff Long acted with actual malice in his hiring, retention, and training and supervision of his subordinates.).

Because DeArmond has provided no evidence of actual malice on the part of any Defendant, Defendants are entitled to official immunity from DeArmond's state

law claims. Accordingly, Defendants' Motion for Summary Judgment is

**GRANTED** as to DeArmond's state law claims in Count II of the Complaint.

### C.    DeArmond's Claim for Attorney's Fees (Count III)

In Count III of her Complaint, DeArmond asks for attorney's fees under

O.C.G.A. § 13-6-11, which provides:

> [t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

In their motion for summary judgment, Defendants contend that, because

"Plaintiff's state law claims fail, Plaintiff is not entitled [to] attorney fees as pled in

her Complaint as 'Count Three.'" Defs.' Br. at 30 n.13. DeArmond fails to

respond, other than insisting that Defendants are not entitled to official immunity.

Pl.'s Opp'n at 24-25.

"O.C.G.A. § 13-6-11 does not create an independent cause of action but

merely permits in certain limited circumstances the recovery of the expenses of

litigation incurred as an additional element of damages." Lamb v. Salvage

Disposal of Ga., 244 Ga. App. 193, 196 (2000) (citation omitted). Because this

Court has granted summary judgment to Defendants as to Count II, DeArmond's

claim for attorney's fees under O.C.G.A. § 13-6-11 in Count III is subject to

dismissal. See Monge v. Madison Cnty. Record, Inc., 802 F. Supp. 2d 1327, 1339 (N.D. Ga. 2001) (dismissing the plaintiff's claim under O.C.G.A. § 13-6-11 when all other state law claims were dismissed).[6]

Accordingly, Defendants' Motion for Summary Judgment as to Count III of the Complaint is **GRANTED**.

## V. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DeArmond seeks summary judgment on her claims under Count I of the Complaint arising from her arrest and the seizure of her vehicle, arguing that these actions violated her Fourth Amendment rights and that Defendants are not entitled to qualified immunity.[7] Pl.'s MPSJ at 10-20. As discussed in Section IV.A.1.b. *supra*, the undisputed evidence shows that DeArmond was, in fact, arrested. Moreover, Defendants' seizure of DeArmond and her vehicle violated her constitutional rights because Defendants lacked probable cause, and Defendants are not entitled to qualified immunity because they did not have knowledge

---

[6] DeArmond's claim for attorney's fees under 42 U.S.C. § 1988 still survives based upon the Fourth Amendment violation found by the Court. See Compl., Prayer for Relief e.

[7] DeArmond admits that whether Defendants searched her vehicle and belongings remains a disputed fact, so she has not moved for summary judgment regarding her Fourth Amendment claims arising from Defendants' alleged searches. Pl.'s MPSJ at 1 n.1; see also Compl. ¶ 64.

sufficient to establish arguable probable cause. Section IV.A.2. *supra*; see also

Rushing, 599 F.3d at 1265-66. Still, DeArmond, as the movant, must provide

evidence to show that "there is no genuine dispute as to any material fact and [she]

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This means that

in addition to showing that her rights were violated, DeArmond also must show

that each Defendant caused the violation to occur. See 42 U.S.C. § 1983.

Accordingly, the Court must determine if the facts, viewed in the light most

favorable to Defendants, show that each Defendant caused the violation of

DeArmond's Fourth Amendment rights.

## A.    Robles's Involvement in the Arrest

It is undisputed that Robles personally effected what this Court has found to

be DeArmond's unlawful arrest. Specifically, he assisted in physically restraining

DeArmond in handcuffs. Robles Body Cam at 21:19:39-21:21:18; Robles Dash

Cam at 9:14:30-9:15:45. Robles also committed the specific act that this Court

finds escalated DeArmond's detention to an arrest: the transportation of

DeArmond to a second location. See Robles Body Cam at 21:19:45-21:21:18;

Robles Dash Cam at 9:14:30-9:17:55. Because Robles's actions caused the

violation of DeArmond's Fourth Amendment rights by effectuating an illegal

arrest, DeArmond is entitled to summary judgment in her favor against Robles.

## B.    Danz's Involvement in the Arrest

DeArmond asserts that Danz also is liable for violating the Fourth Amendment because he supervised the officers on scene at the time of her arrest and he made the decision to have DeArmond and her vehicle transported to the second location. Pl.'s MPSJ at 17; see also Danz Dep. at 47 (testifying that it was Danz's decision to take DeArmond and her vehicle to the second location). Danz also questioned DeArmond at the second location, and she was only taken out of handcuffs at Danz's direction. Danz Body Cam at 21:20:13-21:22:40.

A supervisor can be found liable under Section 1983 for the actions of subordinates only in one of two scenarios: "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Braddy v. Fla. Dep't of Labor & Empl. Sec., 133 F.3d 797, 802 (11th Cir. 1998) (quoting Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As the Eleventh Circuit has explained:

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established . . . when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations and internal quotation marks omitted).

The undisputed facts establish that Danz both participated in the constitutional violation at issue and directed officers under his supervision to act unlawfully. Accordingly, Danz also is liable for the Fourth Amendment violation of effectuating an illegal arrest, and DeArmond is entitled to summary judgment in her favor against Danz.

### C.  Ramirez's Involvement in the Arrest

DeArmond does not contend that Ramirez personally seized her or her vehicle, but instead she asserts merely that Ramirez "grabbed her phone and opened the door to her car for Cadena." Pl.'s MPSJ at 17; see also Ramirez Dep. at 45-47 (testifying that Ramirez did not personally detain DeArmond or have a decision-making role during the encounter). Moreover, DeArmond concedes that whether Ramirez's level of involvement in her arrest rises to the level of culpability remains a jury question. Pl.'s MPSJ at 18 (punctuation and citation omitted) ("A jury could find that Ramirez was sufficiently involved as a participant to be liable for the Fourth Amendment violations."). Because DeArmond has not shown the absence of a genuine issue of material fact as to whether Ramirez

participated in the constitutional violation, DeArmond is not entitled to summary judgment against Ramirez.

## VI.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [Doc. 81] is **GRANTED IN PART and DENIED IN PART**.  Summary judgment is **GRANTED** in favor of Defendants as to Counts II and III of the Complaint but is otherwise **DENIED**.

It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. 90] is **GRANTED IN PART and DENIED IN PART**. Summary judgment is **GRANTED** in favor of Plaintiff as to Count I of the Complaint against Defendants Officer Robles and Lt. Danz with respect to the allegations of illegal seizure, but is otherwise **DENIED**.

It is further **ORDERED** that Plaintiff's Motion to Exclude [Doc. 96] is **GRANTED IN PART and DENIED IN PART** as detailed above, and Defendants' Motion to Substitute Corrected Version of Declaration [Doc. 97] is **GRANTED**.

The only substantive issues remaining in this case are (1) whether Lt. Ramirez is liable for Defendants' illegal seizure; and (2) whether Defendants effectuated searches of Plaintiff's personal belongings and her vehicle in violation

of the Fourth Amendment. Accordingly, it is further **ORDERED** that the parties shall file a consolidated pre-trial order within thirty (30) days of the date of this Order.

**IT IS SO ORDERED** this 11th day of March, 2022.

MARK H. COHEN
United States District Judge